Document comparison by Workshare Professional on Monday, February 11, 2013 11:00:04 AM

| Input: | |
|---|---|
| Document 1 ID | file://F:\wdocs\clntfls\21964\002\PLEADING\~VER\4\00015598.DOC |
| Description | 00015598 |
| Document 2 ID | file://F:\wdocs\clntfls\21964\002\PLEADING\00015598.DOC |
| Description | 00015598 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 51 |
| Deletions | 43 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 94 |

Thomas W. Stilley, OSB No. 883167
Timothy A. Solomon, OSB No. 072573
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
E-Mail: tstilley@sussmanshank.com
        tsolomon@sussmanshank.com

    Attorneys for Paul Joe


IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Paul, Joe<br><br>           Debtor. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 12-36345-elp11

FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION (Dated ~~November 30, 2012~~February 11, 2013)


**THIS DISCLOSURE STATEMENT HAS <u>NOT</u> YET BEEN APPROVED BY THE COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. IF YOU HAVE REQUESTED AND RECEIVED A COPY OF THIS DISCLOSURE STATEMENT IN CONNECTION WITH THE COURT'S HEARING TO CONSIDER APPROVAL OF THE DISCLOSURE STATEMENT, NOTHING CONTAINED HEREIN IS OR SHALL BE DEEMED A SOLICITATION OF ACCEPTANCE OF THE PLAN OF REORGANIZATION.**

TABLE OF CONTENTS

I. INTRODUCTION AND STATEMENTS REGARDING REPRESENTATIONS............. 1

    **A.**    **Introduction** ...................................................................... 1

    **B.**    **The Debtor's Real Property Interests** ...................................... 1

    **C.**    **Definitions and Plan Supremacy**............................................ 1

    **D.**    **Summary of Key Features of the Plan** ................................... 1

    **E.**    **Limited Representations**......................................................... ~~3~~4

    **F.**    **Voting** .................................................................................. 5

    **G.**    **Plan Summary** ..................................................................... 6

II. FUNDING SOURCES FOR THE PLAN...................................................... 8

III.   FACTORS LEADING TO CHAPTER 11 FILING, AND DEBTOR'S ASSETS AND

LIABILITIES   ~~8~~9

    **A.**    **Factors Leading to Chapter 11 Filing** ..................................... ~~8~~9

IV.   DESCRIPTION OF THE PLAN ............................................................. 9

    **A.**    **Classification And Treatment Of Claims Under The Plan** .................... ~~9~~10

        1. ................................................................... Claim Amounts

    ~~9~~10

        2. ................................................................. Effective Date of the Plan

    10

        3. .................................................................Classification Generally

    10

    ~~`~~    4. ......................................................................... Treatment of Claims

    ~~10~~11

    **B.** **Executory Contracts and Unexpired Leases to be Assumed if not**

**Rejected**.............................................................................. **11**

    ~~Rejected ......................................................................... 10~~

1. ................................................................. Assumption of the Lease 11

**C. Objections to Claims**........................................................**11**

**D. Administrative Claims Bar Date** ....................................**12**

**E. Discharge** ......................................................................**12**

**F. Vesting of Property** ...................................................~~12~~**13**

**G. *Exculpation And Limitation Of Liability***................................13

**H. Reservation of Rights** ................................................**13**

V. FEDERAL TAX CONSEQUENCES.......................................~~14~~13

VI. ACCEPTANCE AND CONFIRMATION ................................. 14

**A. Voting Procedures** .....................................................**14**

1. ........................................................................... Generally 14

2. ...........................................................Incomplete Ballots ~~15~~14

3. ...............................................Withdrawal Of Ballots; Revocation 15

4. .......................................................... Submission Of Ballots 15

5. ......................................Confirmation Hearing and Plan Objection Deadline 16

6. ......................................................................Feasibility and Risks 16

**A. Best Interests Of Creditors** .....................................**17**

**B. Confirmation Over Dissenting Class** ......................**17**

1. ........................................................................ No Unfair Discrimination 17 18

2. ........................................................................ Fair and Equitable Test 17 18

    (a)   Secured Creditors ........................................................................ 17 18

    (b)   Unsecured Creditors ........................................................................ 18 19

VII. ALTERNATIVES TO THE PLAN ........................................................................ 19

VIII. CONCLUSION ........................................................................ 19 20

Paul Joe, the Debtor and Debtor-in-Possession in the above-captioned Chapter 11 Case (the "Debtor"), has prepared this First Amended Disclosure Statement in connection with the solicitation of acceptances of the Debtor's First Amended Plan of Reorganization dated ~~November 30, 2012~~February 11, 2013 (the "Plan"). A copy of the Plan accompanies this Disclosure Statement.

I.    INTRODUCTION AND STATEMENTS REGARDING REPRESENTATIONS.

    A.    Introduction.

On August 17, 2012 (the "Petition Date"), the Debtor commenced this Chapter 11 reorganization case ("Case") by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"). Since the Petition Date the Debtor has remained a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

    B.    The Debtor's Real Property Interests.

The Debtor owns the real property and improvements located at 58209 Columbia River Hwy, St. Helens, OR, known as Bing's Restaurant.

    C.    Definitions and Plan Supremacy.

All terms defined in the Plan will have the same meanings when used in this Disclosure Statement. Terms defined in this Disclosure Statement which are also defined in the Plan are solely for convenience and the Debtor does not intend to change the definitions of those terms from the Plan. Furthermore, in the event of any inconsistency between the Plan and this Disclosure Statement, the Plan will control. The Exhibit attached to this Disclosure Statement is incorporated into and is a part of this Disclosure Statement.

    D.    Summary of Key Features of the Plan.

The following is a brief summary of the key features of the Plan:

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

(i)    The Debtor will restructure the promissory note held by his secured lender, Hampton Heights, L.L.C., and secured by the Real Property, as follows: the Reorganized Debtor will execute and deliver a new a promissory note in the original principal amount of $1,203,583.31 (the "Reorganization Note") payable on the terms set forth below and secured by a lien and security interest in all real and personal property that secured the Note, with the same priority Hampton Heights, L.L.C.'s liens and security interests had as of the Petition Date. The Reorganization Note will accrue interest at the rate of 4.50% per annum and will be paid as follows: (1) 120 equal monthly installments of principal and interest based on a 30-year amortization schedule; and (2) a balloon payment of all remaining principal and interest at the end of 10 years; provided, however, that the Reorganized Debtor may prepay all or some portion of the Reorganization Note at any time without prepayment penalty.

(ii)    All other holders of allowed claims will be paid in full, in cash, as follows:

- o    Holders of Allowed Non-Tax Priority Claims will receive payment from Reorganized Debtor of the full amount of their Allowed Claims on or as soon as reasonably practicable following the Effective Date, or, if later, the Allowance Date.

- o    Holders of Allowed General Unsecured Claims will receive payment in full, in 60 equal monthly installments, plus interest at a rate of 3.50% per annum, with such payments to commence within 30 days following the Effective Date.

- o    The Debtor does not believe there are any holders of Property Tax Secured Claims. To the extent there are, each creditor holding an Allowed Property Tax Secured Claim will receive

payment in full, in 24 equal monthly installments, plus interest at the applicable statutory rate, with such payments to commence within 30 days following the Effective Date.

o The holder of the City of St. Helens Secured Claim will receive no distribution under the Plan.  The claim will continue to be secured by a lien in all real and personal property that secured the lien as of the Petition Date, with the same priority such liens had as of the Petition Date.  This claim will be paid by Bing's Restaurant on terms agreed to between the City of St. Helens and Bing's Restaurant; however, the Debtor will remain liable for any amounts due to the holder of the City of St. Helens Secured Claim to the extent such payments are not made by Bing's Restaurant and the Debtor's obligation to the City of St. Helens will not be discharged until the City of St. Helens Secured Claim has been paid in full.

o The creditor holding the One Main Financial Secured Claim will retain its security interest in the 1994 Lexus ES300 and will receive payments consistent with the Debtor's contractual payment obligations in connection therewith.

o The holder the Payroll Tax Secured Claim will receive no distribution under the Plan.  However, the Debtor will remain liable for any amounts due to the holder of the Payroll Tax Secured Claim to the extent such payments are not made by Bing's Restaurant.

**Page 3 of 22~~22~~** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED ~~NOVEMBER 30, 2012~~FEBRUARY 11, 2013

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130
Case 12-36345-elp11    Doc 86    Filed 02/11/13

E.    <u>Limited Representations</u>.

This Disclosure Statement is submitted in accordance with Section 1125 of the Bankruptcy Code for the purpose of soliciting acceptances of the Plan from holders of certain Claims.   The Court has approved this Disclosure Statement as containing information of a kind, and in sufficient detail, which is adequate to enable you to make an informed judgment whether to vote to accept or reject the Plan.

THIS DISCLOSURE STATEMENT IS NOT THE PLAN.   THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SHOULD BE READ COMPLETELY.  FOR THE CONVENIENCE OF CREDITORS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES AND OTHER STATEMENTS REGARDING THE PLAN ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.

NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS OPERATIONS, THE VALUE OF ITS ASSETS, OR THE FUTURE OPERATIONS OF THE REORGANIZED DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

THIS IS A SOLICITATION BY THE DEBTOR ONLY AND IT IS NOT A SOLICITATION BY THE DEBTOR'S ATTORNEYS OR ANY OTHER PROFESSIONALS EMPLOYED BY THE DEBTOR.    THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF THE DEBTOR'S ATTORNEYS OR ANY OTHER PROFESSIONAL.

UNLESS OTHERWISE EXPRESSLY STATED, PORTIONS OF THIS DISCLOSURE STATEMENT DESCRIBING THE DEBTOR'S FINANCIAL CONDITION HAVE NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT, BUT PREPARED FROM INFORMATION COMPILED BY THE DEBTOR FROM RECORDS MAINTAINED IN THE ORDINARY COURSE OF ITS OPERATIONS.  REASONABLE EFFORTS HAVE BEEN MADE TO ACCURATELY PREPARE ALL FINANCIAL INFORMATION WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT FROM THE INFORMATION AVAILABLE TO THE DEBTOR. HOWEVER, AS TO ALL SUCH FINANCIAL INFORMATION, THE DEBTOR IS  UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ERROR.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE TO CREDITORS. CREDITORS SHOULD CONSULT THEIR OWN LEGAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS ABOUT TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON CREDITORS.

F.   <u>Voting</u>.

Under the Bankruptcy Code, only creditors with Claims in "impaired" classes and with Claims that are Allowed, or have been Temporarily Allowed by the Bankruptcy Court pursuant to an order, are entitled to vote on the Plan. In general, a Claim is "allowed," as that term is used in the Bankruptcy Code, if (1) the Claim is listed in the Debtor's schedules of liabilities filed with the Bankruptcy Court as not disputed, contingent, or unliquidated, or (2) a proof of claim has been timely filed with the Court by the holder of the Claim, and the Debtor has not filed an objection to the Claim, or (3) the Bankruptcy Court has entered an order allowing the Claim. If a Claim is not Allowed, but the holder thereof wishes to vote on the Plan, the holder must timely file a motion with the Bankruptcy Court requesting that the Claim be Temporarily Allowed.

In order for a class of Claims to vote to accept the Plan, votes representing at least two-thirds in amount and more than one-half in number of the Claims voting in that class must be cast in favor of acceptance of the Plan. As more fully described below, the Debtor is seeking acceptances from holders of Allowed Claims in the following classes (reserving the right to supplement as to any other impaired class(es) of Claims, if any):

| Class | Description | Status |
|-------|-------------|--------|
| <u>Class</u> | <u>Description</u> | <u>Status</u> |
| Class 2 | Hampton Heights, L.L.C. | Impaired – Entitled to Vote |
| Class 3 | General Unsecured Claims | Impaired – Entitled to Vote |
| Class 4 | Property Tax Secured Claims | Impaired – Entitled to Vote |

| | | |
|---|---|---|
| Class 5 | City of St. Helens Secured Claims | Impaired – Entitled to Vote |

The following classes of Claims are not impaired under the Plan:

| Class | Description | Status |
|---|---|---|
| Class 1 | Non-Tax Priority Claims | Unimpaired – Deemed to Accept |
| ~~Class 5~~ | ~~City of St. Helens Secured Claims~~ | ~~Unimpaired – Deemed to Accept~~ |
| Class 6 | One Main Financial Secured Claim | Unimpaired – Deemed to Accept |
| Class 7 | Payroll Tax Secured Claim | Unimpaired – Deemed to Accept |

The specific treatment of each class under the Plan is set forth in the Plan and is summarized in Articles I.G and IV of this Disclosure Statement. Section 1129(b) of the Bankruptcy Code provides that, if the Plan is rejected by one or more impaired classes of Claims, the Plan nevertheless may be confirmed by the Court if: (1) the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class(es) of Claims that are impaired under the Plan; and (2) at least one class of impaired Claims has voted to accept the Plan. These requirements are described in further detail in Section VII.C of this Disclosure Statement.

A VOTE FOR ACCEPTANCE OF THE PLAN BY THOSE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE IS IMPORTANT. THE DEBTOR RECOMMENDS THAT THE HOLDERS OF ALLOWED IMPAIRED CLAIMS VOTE IN FAVOR OF THE PLAN.

IN ORDER FOR A VOTE TO BE COUNTED, A BALLOT MUST BE PROPERLY FILLED OUT AND ACTUALLY RECEIVED ON OR BEFORE 5 P.M. PREVAILING PACIFIC TIME ON _____ __, ~~2012,~~2013, BY THE DEBTOR'S ATTORNEYS AS SET FORTH IN THE BALLOT.

G.    Plan Summary.

A table summarizing the classification and treatment of Claims under the Plan is set forth below.

Page 6 of ~~22~~22 – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED ~~NOVEMBER 30, 2012~~FEBRUARY 11, 2013

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

| Class/Nature Of Claim | Treatment | Estimated Amount of Allowed Claims | Dates and Approximate Amount of Distributions | Estimated % Distribution |
|---|---|---|---|---|
| Administrative Claims (Including Professional Fees and Expenses) | Unimpaired | $50,000 | To be paid in full either on or as soon as reasonably practicable following the Effective Date, or, if later, the Allowance Date; or upon such terms as may be agreed to in writing by the Administrative Claimant and the Debtor or Reorganized Debtor. | 100% |
| Priority Tax Claims | Unimpaired | $0 | To be paid in full, together with interest from and after the Effective Date at the rate determined pursuant to 11 USC § 511, in equal monthly installments of principal and interest, to commence within 30 days following the Effective Date, with the final payment to be made on or before the 5th anniversary of the first monthly installment payment. | 100% |
| Class 1 Non-Tax Priority Claims | Unimpaired | $735.00 | To be paid in full either on or as soon as reasonably practicable following the Effective Date, or, if later, the Allowance Date. | 100% |
| Class 2 Hampton Heights, L.L.C. Claim | Impaired | $1,203,583.31 | The Reorganized Debtor will, on the Effective Date, execute and deliver to Hampton Heights, L.L.C. a promissory note in the original principal amount of $1,203,583.31 (the "Reorganization Note") payable on the terms set forth below and secured by a lien and security interest in all real and personal property that secured the Note, with the same priority Hampton Heights, L.L.C.'s liens and security interests had as of the Petition Date. The Reorganization Note will accrue interest at the rate of 4.50% per annum and will be paid as follows: (1) 120 equal monthly installments of principal and interest based on a 30-year amortization schedule; and (2) a balloon payment of all remaining principal and interest at the end of 10 years | 100% of restructured Secured Claim in installments with balloon payment in 10 years |
| Class 3 General Unsecured Claims | Impaired | $49,876.73 | Holders of Allowed General Unsecured Claims will receive payment in full, plus interest at a rate of 3.50% per annum, in 60 equal monthly installments, with such payments to commence within 30 days following the Effective Date. The Reorganized Debtor will be free to prepay all or any portion of such Claims at any time. | 100% |

**Page 7 of 2222** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 30, 2012FEBRUARY 11, 2013

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

| Class/Nature Of Claim | Treatment | Estimated Amount of Allowed Claims | Dates and Approximate Amount of Distributions | Estimated % Distribution |
|---|---|---|---|---|
| Class 4 Property Tax Secured Claims | Impaired | $0 | The Debtor does not believe there are any holders of Property Tax Secured Claims. To the extent there are, each creditor holding an Allowed Property Tax Secured Claim will receive payment in full, in 24 equal monthly installments, plus interest at the applicable statutory rate, with such payments to commence within 30 days following the Effective Date. | 100% |
| Class 5 City of St. Helens Secured Claims | ~~Unimpaired~~Impaired | $146,149.57 | The holder of the City of St. Helens Secured ~~Claim~~Claims will receive no distribution under the Plan. The claim will continue to be secured by a lien in all real and personal property that secured the lien as of the Petition Date, with the same priority such liens had as of the Petition Date. This claim will be paid by Bing's Restaurant on terms agreed to between the City of St. Helens and Bing's Restaurant; however, the Debtor will remain liable for any amounts due to the holder of the City of St. Helens Secured ~~Claim~~Claims to the extent such payments are not made by Bing's Restaurant and the Debtor's obligation to the City of St. Helens will not be discharged until the City of St. Helens Secured Claims have been paid in full. | 0% |
| Class 6 One Main Financial Secured Claim | Unimpaired | $6,313.36 | The creditor will retain its security interest in the 1994 Lexus ES300 and will receive payments consistent with the Debtor's contractual payment obligations in connection therewith. | 100% |
| Class 7 Payroll Tax Secured Claim | Unimpaired | $10,000.00 | The holder of the Payroll Tax Secured Claim will receive no distribution under the Plan. However, the Debtor will remain liable for any amounts due to the holder of the Payroll Tax Secured Claim to the extent such payments are not made by Bing's Restaurant. | 0% |

II.     **FUNDING SOURCES FOR THE PLAN.**

The Debtor is contractually entitled to a monthly payment of $10,100 under the Lease. Beginning in ~~January~~February 2013, this payment will be raised to

**Page 8 of ~~22~~22** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED ~~NOVEMBER 30, 2012~~FEBRUARY 11, 2013

1  $11,375 per month.   These Lease payments will be used to fund the

2  Reorganized Debtor's obligations under this Plan.

3  III.   FACTORS LEADING TO CHAPTER 11 FILING, AND DEBTOR'S ASSETS AND

4        LIABILITIES.

5        A.    Factors Leading to Chapter 11 Filing.

6        The Debtor's principal asset is real property in St. Helens, Oregon (the

7  "Real Property"), upon which a restaurant, Bing's Restaurant, is located.  From

8  time to time, the Debtor borrowed money against the Real Property, for

9  improvements and other reasons.   In late 2007, Bing's Restaurant suffered

10  damage in a fire.  Although insurance covered a portion of the repair costs, the

11  Debtor borrowed additional funds to pay for renovations.

12        In 2010, the Debtor took out a loan from Hampton Heights, L.L.C., to pay

13  to renovate Bing's Restaurant and to take out the then-existing lender.   In

14  connection with that loan, the Debtor issued that certain promissory note dated

15  June 17, 2010 to Hampton Heights, L.L.C. in the original principal amount of

16  $1,100,000.  The Note required the Debtor to make payments of interest only, at

17  the rate of 11% per annum ($10,100 per month), beginning June 1, 2010.  The

18  entire balance became payable in full on December 1, 2011.  The Debtor made

19  all of his monthly payments through December 2011, but was unable to obtain a

20  new loan or negotiate an extension with Hampton Heights, L.L.C.  After Hampton

21  Heights, L.L.C. commenced foreclosure proceedings against the Real Property,

22  the Debtor was forced to file this Case.

23  IV.   DESCRIPTION OF THE PLAN.

24        The following description of the Plan is for informational purposes only and does

25  not contain all provisions of the Plan.  Creditors should not rely on this description for

26  voting purposes but should read the Plan in its entirety.  This summary of the Plan does

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  not purport to be complete.  THE PLAN IS CONTROLLING IN THE EVENT OF ANY

2  INCONSISTENCY BETWEEN THE CONTENTS OF THE PLAN AND THIS

3  DISCLOSURE STATEMENT.

4      A.  <u>Classification And Treatment Of Claims Under The Plan</u>.

5      1.  <u>Claim Amounts</u>.

6  Until Allowed, certain Claims against the Debtor are in unliquidated amounts.

7  Accordingly, the amounts of Claims specified in this Disclosure Statement reflect only

8  the Debtor's estimates based on information available to him.  Additionally, the amounts

9  of Claims specified in this Disclosure Statement do not include contingent or

10  unliquidated Claims against the Debtor.

11      2.  <u>Effective Date of the Plan</u>.

12  The Effective Date of the Plan determines when the performance of many of the

13  obligations under the Plan is due.  Unless an appeal is taken from the Confirmation

14  Order, the Effective Date is expected to occur on the first day after the 14th day after

15  entry of the Confirmation Order.

16      3.  <u>Classification Generally</u>.

17  Under the Plan, all Claims against the Debtor, other than Administrative Claims

18  and Priority Tax Claims, are divided into seven separate classes, which the Debtor

19  believes complies with the requirements of the Bankruptcy Code.  Unless otherwise

20  expressly stated in the Plan, the respective treatments under the Plan of Allowed

21  Claims are in full discharge and satisfaction of those Allowed Claims.  Except as

22  provided in the Plan, all Claims against the Debtor arising prior to the Confirmation Date

23  will be discharged upon the Court's entry of a discharge order after completion of all

24  payments under the Plan.

25

26

4. <u>Treatment of Claims</u>.

A table that briefly summarizes the classification and treatment of Claims under the Plan is set forth in Section I.G above. Reference is made to the Plan itself for the specific terms and provisions.

B. <u>Executory Contracts and Unexpired Leases to be Assumed if not Rejected</u>.

On the Effective Date, all executory contracts and unexpired leases of the Debtor that have not been rejected under this Plan or by order of the Bankruptcy Court, and are not the subject of a motion to reject pending on the Confirmation Date, will be deemed assumed by the Debtor and Reorganized Debtor on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under Section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Debtor. In the event of a dispute regarding the amount of any such payments, or the ability of the Debtor to provide adequate assurance of future performance, the Reorganized Debtor will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of the Final Order resolving such dispute.

1. <u>Assumption of the Lease</u>.

At closing, the Reorganized Debtor will assume all of the Debtor's right, title, interest and obligations under the Lease.

C. <u>Objections to Claims</u>.

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed by Court order prior to the Effective Date, the Reorganized Debtor, any Claimant, or any other party in interest may object to the allowance of any

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Claim against the Debtor or seek estimation thereof on any grounds permitted by the Bankruptcy Code by filing the appropriate pleading in the Bankruptcy Court at any time prior to the first Business Day which is at least 60 days after the Effective Date. No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims. If a Claim is not an Allowed Claim on the Effective Date, or when payment is otherwise due under the Plan, payment on the Allowed Claim (plus interest, if any, as provided in the Plan) will be made as soon as practicable following the Allowance Date.

D. <u>Administrative Claims Bar Date</u>.

All requests for payment of Administrative Claims other than Current Obligations must be served and filed with the Bankruptcy Court no later than 30 days after the Effective Date. Any Administrative Claim that is not served and filed by such date will be forever barred. After approval of the final fee applications of the Chapter 11 Professionals by the Bankruptcy Court for services provided and costs incurred during the course of administration of the Case, the Chapter 11 Professionals will not be required to submit any further fee applications to the Bankruptcy Court.

E. <u>Discharge</u>.

Except as otherwise expressly provided in the Plan (including Section 4.5), in the Plan Documents, or in the Confirmation Order, once all payments have been completed under the Plan, the Reorganized Debtor will request that the Bankruptcy Court enter an order discharging the Debtor and Reorganized Debtor from all liability on any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtor or his Representatives before the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any

**Page 12 of ~~2222~~** – <u>FIRST AMENDED</u> DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED ~~NOVEMBER 30, 2012~~<u>FEBRUARY 11, 2013</u>

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

such Claims and Debts, whether such interest accrued before or after the date of commencement of this Case, and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not a proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy Code, such Claim is Allowed under this Plan, or the holder of such Claim has accepted this Plan.

F.    Vesting of Property.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, the Reorganized Debtor will be vested with all of the property of the Estate free and clear of all Claims, liens, encumbrances, charges and other interests of Creditors and Claimants.  As of the Effective Date, the Reorganized Debtor may hold, use, dispose, and otherwise deal with such property and conduct his affairs, in each case, free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court, other than those restrictions expressly imposed by the Plan, the Confirmation Order, or the Plan Documents.

G.    *Exculpation And Limitation Of Liability.*

*None of the Released Parties[1]  will have or incur any liability to, or be subject to any right of action by, any holder of a Claim, any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the administration of the Plan, except liability for their willful misconduct, negligence, or breach of fiduciary duty,*

---

[1] *"Released Parties" means the Debtor and Reorganized Debtor; and his managers, officers, directors, employees, representatives, and agents acting in such capacity.*

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 *and in all respects, such parties will be entitled to reasonably rely upon the*
2 *advice of counsel with respect to their duties and responsibilities under the*
3 *Plan or in the context of the Case.* H. Reservation of Rights.

Except as expressly provided in the Plan and this Disclosure Statement, the Plan will have no force or effect unless the Confirmation Order is entered by the Bankruptcy Court and the Effective Date has occurred. The filing of the Plan, any statement or provision contained in the Plan or in this Disclosure Statement, or the taking of any action by the Debtor with respect to the Plan will not be, or be deemed to be, an admission or waiver of any rights of the Debtor.

V. FEDERAL TAX CONSEQUENCES.

THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. ACCORDINGLY, ALL HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT THEIR TAX ADVISORS WITH SPECIFIC REFERENCE TO THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO SUCH HOLDER. NEITHER THE DEBTOR OR HIS COUNSEL MAKE ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO THE DEBTOR OR ANY CREDITOR.

VI. ACCEPTANCE AND CONFIRMATION.

A. Voting Procedures.

1. Generally.

Only those Creditors whose Claims fall within one or more classes that are impaired under the Plan are eligible to vote to accept or reject the Plan. In that regard, the holders of Allowed or Temporarily Allowed Claims in Classes 2-4 5 are entitled to vote on the Plan. Classes 1 and 5 6-7 are not impaired under the Plan and are deemed to have accepted the Plan without voting. The Debtor reserves the right to supplement

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11   Doc 86   Filed 02/11/13

this Disclosure Statement (if necessary) and to solicit any Class which may prove to be impaired and entitled to vote.

Separate Ballots will be sent to the known holders of Claims whether or not such Claims are Disputed. However, only the holders of Allowed or Temporarily Allowed Claims in one or more impaired classes are entitled to vote on the Plan. A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection and enters an order allowing the Claim. The holder of a Disputed Claim is not entitled to vote on the Plan unless the holder of such Claim requests that the Bankruptcy Court, pursuant to Bankruptcy Rule 3018, temporarily allow the Claim in an appropriate amount solely for the purpose of enabling the holder of such Disputed Claim to vote on the Plan, and the Bankruptcy Court does so.

2. <u>Incomplete Ballots</u>.

Ballots which are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted as a vote to accept or to reject the Plan.

3. <u>Withdrawal Of Ballots; Revocation</u>.

The person or entity which has delivered a Ballot accepting or rejecting the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Debtor's attorneys, at any time prior to the voting deadline.

A notice of withdrawal, to be valid, must: (i) contain the description of the Claim or Claims to which it relates and the amount of such Claim or Claims; (ii) be signed by the voting person or entity in the same manner as the Ballot; and (iii) be received by the Debtor's attorneys, Sussman Shank LLP, in a timely manner at the address set forth below.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballots or change in the vote which is not received in a timely manner will not be effective to withdraw or change a previously furnished Ballot.

4.    Submission Of Ballots.

The form of Ballot for each of the Classes entitled to vote on the Plan will be sent to the parties entitled to vote along with a copy of the Court-approved Disclosure Statement and a copy of the Plan.    Persons or entities receiving the Disclosure Statement and Plan should read the Disclosure Statement, Plan, and Ballot carefully. Any questions concerning voting procedures should be addressed to:

> Sussman Shank LLP
> Attn: Timothy A. Solomon
> 1000 SW Broadway, Suite 1400
> Portland, OR 97205
> Phone:  503-227-1111
> Fax:  503-248-0130

Ballot(s) or withdrawals/revocations must be returned to the Debtor's attorneys at the above address.  Ballots (and withdrawals/revocations) must be postmarked no later than _____ __, 2012.2013.  In addition, Ballots may be faxed to the Debtor's attorneys at 503-248-0130.  To be effective, transmission of the facsimile must begin no later than 5:00 P.M. Prevailing Pacific Time on _____ __, 2012.2013.

5.    Confirmation Hearing and Plan Objection Deadline.

The Bankruptcy Court will hold a hearing on confirmation of the Plan commencing on _____ __, 201 2013 at __:__ _.m. in the Bankruptcy Courtroom No. 1, 1001 SW 5th Ave #700, Portland, OR 97204.  All objections, if any, to the confirmation of the Plan must be in writing; must state with specificity the grounds for any such objections; and must be filed with the Bankruptcy Court on or before  _____ __, 201 2013:

6.    Feasibility and Risks.

**Page 16 of 2122** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 30, 2012FEBRUARY 11, 2013

1      The Bankruptcy Code requires, as a condition to confirmation, that the

2  Bankruptcy Court find that liquidation of the Debtor or the need for future reorganization

3  is not likely to follow after confirmation.  For the purpose of determining whether the

4  Plan meets this requirement, the Debtor has prepared financial projections attached

5  hereto as Exhibit 1 showing that the Reorganized Debtor will have the resources and

6  ability to pay those Claims that are due on confirmation of the Plan and all future

7  obligations as they come due.

8      The principal risk to the Reorganized Debtor's ability to perform under the Plan is

9  that Bing's Restaurant, the tenant on the Debtor's real property, may break its lease,

10  choose not to renew its lease, or otherwise cease operating.  Rents from Bing's

11  Restaurant are the only current source of income for the Debtor, and if the Reorganized

12  Debtor cannot continue to collect those rents in the projected amounts, he will be

13  unable to perform his obligations under the Plan.

14      An additional, related risk is that Bing's Restaurant will be unable or unwilling to

15  pay the City of St. Helens Secured Claims (Class 5) or the Payroll Tax Secured Claims

16  (Class 7).  Bing's Restaurant is co-liable for these obligations, and has indicated its

17  willingness and intention to pay them.  In addition, the Debtor and Bing's Restaurant are

18  engaged in discussions with the City of St. Helens regarding a payment plan regarding

19  the City of St. Helens Secured Claims, which the Debtor expects to be successful.  In

20  the event those discussions are not successful, or if they are but Bing's Restaurant

21  subsequently fails to make payments to the City of St. Helens for any reason, the

22  Debtor may not be able to make those payments himself.

23      A.    Best Interests Of Creditors.

24      Under Section 1129(a)(7) of the Bankruptcy Code, the Plan must provide that

25  Creditors receive at least as much under the Plan as they would receive in a Chapter 7

26  liquidation of the Debtor.  Although the Debtor believes the value of his real property

**Page 17 of 2222** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING
DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 30, 2012FEBRUARY
11, 2013

exceeds the aggregate amount of all claims against him, it is not certain that a sale of such real property would lead to payment in full of all creditors, for several reasons. First, the market value of the property might be less than anticipated. More importantly, the property's long-term tenant, Bing's Restaurant, is owned and operated by the Debtor's mother and step father on a lease that expires at the end of 2014. If the property were sold by a trustee in a Chapter 7 case, Bing's Restaurant might choose to vacate the premises at the termination of its lease (or earlier), and it is unclear how such a vacancy might affect the market price of the property. It is also difficult to predict how long the property might take to sell under any set of circumstances.

Under the Plan, all creditors are to be paid in full, which is the most they could receive under Chapter 7.7 under any circumstances. Therefore, the Plan satisfies the "best interest of creditors" test of Section 1129(a)(7) of the Bankruptcy Code.

B. Confirmation Over Dissenting Class.

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the request of the Proponent if all other requirements under Section 1129(a) of the Bankruptcy Code are satisfied, and if, as to each impaired class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting class. Each of these requirements is discussed below.

1. No Unfair Discrimination.

The Plan "does not discriminate unfairly" if: (a) the legal rights of a dissenting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class; and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims. The Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims.

**Page 18 of 2222** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 30, 2012FEBRUARY 11, 2013

2. <u>Fair and Equitable Test</u>.

The Bankruptcy Code establishes different "fair and equitable" tests for secured claims and unsecured claims, as follows:

(a) Secured Creditors. To satisfy the "fair and equitable" requirement as to a class of Secured Claims, the Plan must, at a minimum, provide that (i) each impaired Secured Creditor retains its liens on the property securing its Claim, and receive on account of its Secured Claim deferred cash payments totaling the Allowed amount of its Secured Claim, of a value, as of the Effective Date of the Plan, of at least the value of the Creditor's interest in the Estate's interest in the property securing such Claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its Allowed Secured Claim, or (iii) the property securing the Claim is sold free and clear of liens with such liens to attach to the proceeds, and the liens against such proceeds are treated in accordance with clause (i) or (ii) of this subparagraph (a). Secured Creditors are either (i) receiving Allowed Secured Claims equal to the value of the creditor's interest in the Estate's interest in the property securing their Claims, plus payments to commence following confirmation at a market interest rate to provide them with deferred cash payments equal to the Allowed amount of their Secured Claims as of the Effective Date of the Plan, or (ii) continuing to receive payments in the ordinary course consistent with the Debtor's contractual payment obligations, or (iii) continuing to receive payments in the ordinary course from third parties, with the Debtor remaining liable for such payments in the event they are not received from such third parties.

(b) Unsecured Creditors. To satisfy the "fair and equitable" requirement as to a class of unsecured Claims, the Plan must, at a minimum, provide that (i) each impaired unsecured creditor receives or retains under the Plan property of a value equal to the amount of its Allowed Claim, or (ii) the holders of Claims and interests that are junior to the Claims of the non-accepting class do not receive any

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

property under the Plan on account of such Claims and interests, except the Debtor may retain property included in the Estate under Section 1115 of the Bankruptcy Code as long as the value of property to be distributed under the Plan is not less than the projected disposable income of the Debtor to be received within the 5-year period beginning on the date the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer. This is referred to as the "Absolute Priority Rule".

In this case, each impaired unsecured creditor will receive or retain under the Plan property of a value equal to the amount of its Allowed Claim. Thus, the Debtor believes the Plan complies with the fair and equitable requirement for Unsecured Creditors.

VII. <u>ALTERNATIVES TO THE PLAN</u>.

If the Plan is not confirmed, several different events could occur. Among the alternatives to the Plan are: (1) the Debtor could propose another plan providing for different treatment of Claims; (2) a creditor or other interested party could propose a competing plan; (3) the Debtor could convert the Case to Chapter 7; or (4) the Bankruptcy Court (after appropriate notice and hearing) could dismiss the Case if no party is able to confirm a plan in a reasonable period of time.

VIII. <u>CONCLUSION</u>.

Under the Plan, all creditors will be paid in full, and the Debtor will retain the Real Property. Other than Hampton Heights, L.L.C., all parties will be paid in full within 24 months of the Effective Date. If the Plan is not confirmed, substantial uncertainty will result concerning the timing and amount of any payments. The Debtor therefore believes that all creditors should vote to accept the Plan as it provides the best option for creditors to prompt payment in full of their Claims.

Dated: ~~November 30, 2012~~ February 11, 2013

**Page 20 of ~~22~~22** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED ~~NOVEMBER 30, 2012~~FEBRUARY 11, 2013

{SIGNATURES TO FOLLOW}

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

DEBTOR:

*/s/ Paul Joe*
_____
Paul Joe


SUSSMAN SHANK LLP

*/s/ Timothy A. Solomon*
_____
By: Thomas W. Stilley, OSB No. 883167
    Timothy A. Solomon, OSB No. 072573
    Attorneys for Paul Joe

F:\WDOCS\CLNTFLS\21964\002\PLEADING\00015598.DOC

**Page 22 of ~~22~~22** – <u>FIRST AMENDED</u> DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED ~~NOVEMBER 30, 2012~~<u>FEBRUARY 11, 2013</u>

Thomas W. Stilley, OSB No. 883167
Timothy A. Solomon, OSB No. 072573
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
E-Mail: tstilley@sussmanshank.com
        tsolomon@sussmanshank.com

    Attorneys for Paul Joe

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | | |
|---|---|---|
| In re: | ) | Case No. 12-36345-elp11 |
| | ) | |
| Paul, Joe | ) | FIRST AMENDED DISCLOSURE |
| | ) | STATEMENT CONCERNING |
| Debtor. | ) | DEBTOR'S PLAN OF |
| | ) | REORGANIZATION (Dated February |
| | ) | 11, 2013) |
| | ) | |
| | ) | |

**THIS DISCLOSURE STATEMENT HAS <u>NOT</u> YET BEEN APPROVED BY THE  COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  IF YOU HAVE REQUESTED AND RECEIVED A COPY OF THIS DISCLOSURE STATEMENT IN CONNECTION WITH THE COURT'S HEARING TO CONSIDER APPROVAL OF THE DISCLOSURE STATEMENT, NOTHING CONTAINED HEREIN IS OR SHALL BE DEEMED A SOLICITATION OF ACCEPTANCE OF THE PLAN OF REORGANIZATION.**

TABLE OF CONTENTS

I. INTRODUCTION AND STATEMENTS REGARDING REPRESENTATIONS.............1

    A.    **Introduction** .................................................1

    B.    **The Debtor's Real Property Interests** .........................1

    C.    **Definitions and Plan Supremacy**................................1

    D.    **Summary of Key Features of the Plan** .........................1

    E.    **Limited Representations**......................................4

    F.    **Voting** .......................................................5

    G.    **Plan Summary** ................................................6

II. FUNDING SOURCES FOR THE PLAN....................................8

III.  FACTORS LEADING TO CHAPTER 11 FILING, AND DEBTOR'S ASSETS AND

LIABILITIES   9

    A.    **Factors Leading to Chapter 11 Filing** ........................9

IV.  DESCRIPTION OF THE PLAN ........................................9

    A.    **Classification And Treatment Of Claims Under The Plan** .......10

1.    Claim Amounts ..............................................10

2.    Effective Date of the Plan .................................10

3.    Classification Generally ...................................10

4.    Treatment of Claims ........................................11

    B.    **Executory Contracts and Unexpired Leases to be Assumed if not Rejected**........................................................11

1.    Assumption of the Lease ....................................11

    C.    **Objections to Claims**.........................................11

    D.    **Administrative Claims Bar Date** ..............................12

    E.    **Discharge** ...................................................12

    F.    **Vesting of Property** .........................................13

1        **G.    Reservation of Rights** ........................................................................... **13**

2     V.FEDERAL TAX CONSEQUENCES........................................................ 13

3     VI.  ACCEPTANCE AND CONFIRMATION ............................................. 14

4        **A.    Voting Procedures** ......................................................... **14**

5     1.    Generally ......................................................................... 14

6     2.    Incomplete Ballots ........................................................... 15

7     3.    Withdrawal Of Ballots; Revocation .................................... 15

8     4.    Submission Of Ballots ..................................................... 15

9     5.    Confirmation Hearing and Plan Objection Deadline ........... 16

10    6.    Feasibility and Risks ........................................................ 16

11       **A.    Best Interests Of Creditors** ................................................. **17**

12       **B.    Confirmation Over Dissenting Class** ................................. **17**

13    1.    No Unfair Discrimination ................................................... 18

14    2.    Fair and Equitable Test .................................................... 18

15          (a)  Secured Creditors ................................................. 18

16          (b)  Unsecured Creditors ............................................. 19

17     VII.  ALTERNATIVES TO THE PLAN........................................................ 20

18     VIII.  CONCLUSION ............................................................................. 20

19

20

21

22

23

24

25

26

1    Paul Joe, the Debtor and Debtor-in-Possession in the above-captioned

2    Chapter 11 Case (the "Debtor"), has prepared this First Amended Disclosure Statement

3    in connection with the solicitation of acceptances of the Debtor's First Amended Plan of

4    Reorganization dated February 11, 2013 (the "Plan").  A copy of the Plan accompanies

5    this Disclosure Statement.

6    I.    <u>INTRODUCTION AND STATEMENTS REGARDING REPRESENTATIONS</u>.

7         A.    <u>Introduction</u>.

8         On August 17, 2012 (the "Petition Date"), the Debtor commenced this Chapter 11

9    reorganization case ("Case") by filing a voluntary petition under Chapter 11 of the

10   United States Bankruptcy Code ("Bankruptcy Code").   Since the Petition Date the

11   Debtor has remained a debtor-in-possession pursuant to Sections 1107 and 1108 of the

12   Bankruptcy Code.

13        B.    <u>The Debtor's Real Property Interests</u>.

14        The Debtor owns the real property and improvements located at 58209 Columbia

15   River Hwy, St. Helens, OR, known as Bing's Restaurant.

16        C.    <u>Definitions and Plan Supremacy</u>.

17        All terms defined in the Plan will have the same meanings when used in this

18   Disclosure Statement.   Terms defined in this Disclosure Statement which are also

19   defined in the Plan are solely for convenience and the Debtor does not intend to change

20   the definitions of those terms from the Plan.   Furthermore, in the event of any

21   inconsistency between the Plan and this Disclosure Statement, the Plan will control.

22   The Exhibit attached to this Disclosure Statement is incorporated into and is a part of

23   this Disclosure Statement.

24        D.    <u>Summary of Key Features of the Plan</u>.

25        The following is a brief summary of the key features of the Plan:

26

**Page 1 of 20** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING
DEBTOR'S PLAN OF REORGANIZATION DATED FEBRUARY 11, 2013

1     (i)        The Debtor will restructure the promissory note held by his secured

2                     lender, Hampton Heights, L.L.C., and secured by the Real Property, as

3                     follows:  the Reorganized Debtor will execute and deliver a new a

4                     promissory note in the original principal amount of $1,203,583.31 (the

5                     "Reorganization Note") payable on the terms set forth below and secured

6                     by a lien and security interest in all real and personal property that

7                     secured the Note, with the same priority Hampton Heights, L.L.C.'s liens

8                     and security interests had as of the Petition Date.  The Reorganization

9                     Note will accrue interest at the rate of 4.50% per annum and will be paid

10                    as follows: (1) 120 equal monthly installments of principal and interest

11                    based on a 30-year amortization schedule; and (2) a balloon payment of

12                    all remaining principal and interest at the end of 10 years; provided,

13                    however, that the Reorganized Debtor may prepay all or some portion of

14                    the Reorganization Note at any time without prepayment penalty.

15     (ii)       All other holders of allowed claims will be paid in full, in cash, as follows:

16            o      Holders of Allowed Non-Tax Priority Claims will receive

17                    payment from Reorganized Debtor of the full amount of their

18                    Allowed Claims on or as soon as reasonably practicable

19                    following the Effective Date, or, if later, the Allowance Date.

20            o      Holders of Allowed General Unsecured Claims will receive

21                    payment in full, in 60 equal monthly installments, plus interest

22                    at a rate of 3.50% per annum, with such payments to

23                    commence within 30 days following the Effective Date.

24            o      The Debtor does not believe there are any holders of Property

25                    Tax Secured Claims.  To the extent there are, each creditor

26                    holding an Allowed Property Tax Secured Claim will receive

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

| | | |
|---|---|---|
| 1 | | payment in full, in 24 equal monthly installments, plus interest |
| 2 | | at the applicable statutory rate, with such payments to |
| 3 | | commence within 30 days following the Effective Date. |
| 4 | o | The holder of the City of St. Helens Secured Claim will receive |
| 5 | | no distribution under the Plan.  The claim will continue to be |
| 6 | | secured by a lien in all real and personal property that secured the |
| 7 | | lien as of the Petition Date, with the same priority such liens had as |
| 8 | | of the Petition Date.  This claim will be paid by Bing's |
| 9 | | Restaurant on terms agreed to between the City of St. Helens |
| 10 | | and Bing's Restaurant; however, the Debtor will remain liable |
| 11 | | for any amounts due to the holder of the City of St. Helens |
| 12 | | Secured Claim to the extent such payments are not made by |
| 13 | | Bing's Restaurant and the Debtor's obligation to the City of St. |
| 14 | | Helens will not be discharged until the City of St. Helens |
| 15 | | Secured Claim has been paid in full. |
| 16 | o | The creditor holding the One Main Financial Secured Claim |
| 17 | | will retain its security interest in the 1994 Lexus ES300 and |
| 18 | | will receive payments consistent with the Debtor's contractual |
| 19 | | payment obligations in connection therewith. |
| 20 | o | The holder the Payroll Tax Secured Claim will receive no |
| 21 | | distribution under the Plan.  However, the Debtor will remain |
| 22 | | liable for any amounts due to the holder of the Payroll Tax |
| 23 | | Secured Claim to the extent such payments are not made by |
| 24 | | Bing's Restaurant. |
| 25 | | |
| 26 | | |

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

1        E.     <u>Limited Representations</u>.

2        This Disclosure Statement is submitted in accordance with Section 1125 of the

3   Bankruptcy Code for the purpose of soliciting acceptances of the Plan from holders of

4   certain Claims.   The Court has approved this Disclosure Statement as containing

5   information of a kind, and in sufficient detail, which is adequate to enable you to make

6   an informed judgment whether to vote to accept or reject the Plan.

7
8   THIS DISCLOSURE STATEMENT IS NOT THE PLAN.   THIS
    DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH
9   ACCOMPANIES THIS DISCLOSURE STATEMENT, SHOULD BE READ
    COMPLETELY. FOR THE CONVENIENCE OF CREDITORS, THE PLAN
10  IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL
    SUMMARIES AND OTHER STATEMENTS REGARDING THE PLAN
11  ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH
    IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.
12
13  NO REPRESENTATIONS OR ASSURANCES CONCERNING THE
    DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS OPERATIONS, THE
14  VALUE OF ITS ASSETS, OR THE FUTURE OPERATIONS OF THE
    REORGANIZED DEBTOR ARE AUTHORIZED BY THE DEBTOR
15  OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

16  THIS IS A SOLICITATION BY THE DEBTOR ONLY AND IT IS NOT A
    SOLICITATION BY THE DEBTOR'S ATTORNEYS OR ANY OTHER
17  PROFESSIONALS EMPLOYED BY THE DEBTOR.   THE
    REPRESENTATIONS MADE HEREIN ARE THOSE OF THE DEBTOR
18  AND NOT OF THE DEBTOR'S ATTORNEYS OR ANY OTHER
    PROFESSIONAL.
19
20  UNLESS OTHERWISE EXPRESSLY STATED, PORTIONS OF THIS
    DISCLOSURE STATEMENT DESCRIBING THE DEBTOR'S FINANCIAL
21  CONDITION HAVE NOT BEEN SUBJECTED TO AN INDEPENDENT
    AUDIT, BUT PREPARED FROM INFORMATION COMPILED BY THE
22  DEBTOR FROM RECORDS MAINTAINED IN THE ORDINARY COURSE
    OF ITS OPERATIONS.  REASONABLE EFFORTS HAVE BEEN MADE
23  TO ACCURATELY PREPARE ALL FINANCIAL INFORMATION WHICH
    MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT FROM THE
24  INFORMATION AVAILABLE TO THE DEBTOR. HOWEVER, AS TO ALL
    SUCH FINANCIAL INFORMATION, THE DEBTOR IS  UNABLE TO
25  WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED
    HEREIN IS WITHOUT ERROR.
26

**Page 4 of 20** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING
DEBTOR'S PLAN OF REORGANIZATION DATED FEBRUARY 11, 2013

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE TO CREDITORS. CREDITORS SHOULD CONSULT THEIR OWN LEGAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS ABOUT TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON CREDITORS.

F.     Voting.

Under the Bankruptcy Code, only creditors with Claims in "impaired" classes and with Claims that are Allowed, or have been Temporarily Allowed by the Bankruptcy Court pursuant to an order, are entitled to vote on the Plan.  In general, a Claim is "allowed," as that term is used in the Bankruptcy Code, if (1) the Claim is listed in the Debtor's schedules of liabilities filed with the Bankruptcy Court as not disputed, contingent, or unliquidated, or (2) a proof of claim has been timely filed with the Court by the holder of the Claim, and the Debtor has not filed an objection to the Claim, or (3) the Bankruptcy Court has entered an order allowing the Claim.  If a Claim is not Allowed, but the holder thereof wishes to vote on the Plan, the holder must timely file a motion with the Bankruptcy Court requesting that the Claim be Temporarily Allowed.

In order for a class of Claims to vote to accept the Plan, votes representing at least two-thirds in amount and more than one-half in number of the Claims voting in that class must be cast in favor of acceptance of the Plan.  As more fully described below, the Debtor is seeking acceptances from holders of Allowed Claims in the following classes (reserving the right to supplement as to any other impaired class(es) of Claims, if any):

| Class | Description | Status |
| --- | --- | --- |
| Class 2 | Hampton Heights, L.L.C. | Impaired – Entitled to Vote |
| Class 3 | General Unsecured Claims | Impaired – Entitled to Vote |
| Class 4 | Property Tax Secured Claims | Impaired – Entitled to Vote |

**Page 5 of 20** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED FEBRUARY 11, 2013

Class 5             City of St. Helens Secured Claims      Impaired – Entitled to Vote

The following classes of Claims are not impaired under the Plan:

| Class | Description | Status |
|-------|-------------|--------|
| Class 1 | Non-Tax Priority Claims | Unimpaired – Deemed to Accept |
| Class 6 | One Main Financial Secured Claim | Unimpaired – Deemed to Accept |
| Class 7 | Payroll Tax Secured Claim | Unimpaired – Deemed to Accept |

The specific treatment of each class under the Plan is set forth in the Plan and is summarized in Articles I.G and IV of this Disclosure Statement.  Section 1129(b) of the Bankruptcy Code provides that, if the Plan is rejected by one or more impaired classes of Claims, the Plan nevertheless may be confirmed by the Court if: (1) the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class(es) of Claims that are impaired under the Plan; and (2) at least one class of impaired Claims has voted to accept the Plan.  These requirements are described in further detail in Section VII.C of this Disclosure Statement.

A VOTE FOR ACCEPTANCE OF THE PLAN BY THOSE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE IS IMPORTANT.  THE DEBTOR RECOMMENDS THAT THE HOLDERS OF ALLOWED IMPAIRED CLAIMS VOTE IN FAVOR OF THE PLAN.

IN ORDER FOR A VOTE TO BE COUNTED, A BALLOT MUST BE PROPERLY FILLED OUT AND ACTUALLY RECEIVED ON OR BEFORE 5 P.M. PREVAILING PACIFIC TIME ON _____ __, 2013, BY THE DEBTOR'S ATTORNEYS AS SET FORTH IN THE BALLOT.

G.    Plan Summary.

A table summarizing the classification and treatment of Claims under the Plan is set forth below.

**Page 6 of 20** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED FEBRUARY 11, 2013

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

| Class/Nature Of Claim | Treatment | Estimated Amount of Allowed Claims | Dates and Approximate Amount of Distributions | Estimated % Distribution |
|---|---|---|---|---|
| Administrative Claims (Including Professional Fees and Expenses) | Unimpaired | $50,000 | To be paid in full either on or as soon as reasonably practicable following the Effective Date, or, if later, the Allowance Date; or upon such terms as may be agreed to in writing by the Administrative Claimant and the Debtor or Reorganized Debtor. | 100% |
| Priority Tax Claims | Unimpaired | $0 | To be paid in full, together with interest from and after the Effective Date at the rate determined pursuant to 11 USC § 511, in equal monthly installments of principal and interest, to commence within 30 days following the Effective Date, with the final payment to be made on or before the 5th anniversary of the first monthly installment payment. | 100% |
| Class 1 Non-Tax Priority Claims | Unimpaired | $735.00 | To be paid in full either on or as soon as reasonably practicable following the Effective Date, or, if later, the Allowance Date. | 100% |
| Class 2 Hampton Heights, L.L.C. Claim | Impaired | $1,203,583.31 | The Reorganized Debtor will, on the Effective Date, execute and deliver to Hampton Heights, L.L.C. a promissory note in the original principal amount of $1,203,583.31 (the "Reorganization Note") payable on the terms set forth below and secured by a lien and security interest in all real and personal property that secured the Note, with the same priority Hampton Heights, L.L.C.'s liens and security interests had as of the Petition Date. The Reorganization Note will accrue interest at the rate of 4.50% per annum and will be paid as follows: (1) 120 equal monthly installments of principal and interest based on a 30-year amortization schedule; and (2) a balloon payment of all remaining principal and interest at the end of 10 years | 100% of restructured Secured Claim in installments with balloon payment in 10 years |
| Class 3 General Unsecured Claims | Impaired | $49,876.73 | Holders of Allowed General Unsecured Claims will receive payment in full, plus interest at a rate of 3.50% per annum, in 60 equal monthly installments, with such payments to commence within 30 days following the Effective Date. The Reorganized Debtor will be free to prepay all or any portion of such Claims at any time. | 100% |

**Page 7 of 20** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED FEBRUARY 11, 2013

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

| Class/Nature Of Claim | Treatment | Estimated Amount of Allowed Claims | Dates and Approximate Amount of Distributions | Estimated % Distribution |
|---|---|---|---|---|
| Class 4<br><br>Property Tax Secured Claims | Impaired | $0 | The Debtor does not believe there are any holders of Property Tax Secured Claims. To the extent there are, each creditor holding an Allowed Property Tax Secured Claim will receive payment in full, in 24 equal monthly installments, plus interest at the applicable statutory rate, with such payments to commence within 30 days following the Effective Date. | 100% |
| Class 5<br><br>City of St. Helens Secured Claims | Impaired | $146,149.57 | The holder of the City of St. Helens Secured Claims will receive no distribution under the Plan. The claim will continue to be secured by a lien in all real and personal property that secured the lien as of the Petition Date, with the same priority such liens had as of the Petition Date. This claim will be paid by Bing's Restaurant on terms agreed to between the City of St. Helens and Bing's Restaurant; however, the Debtor will remain liable for any amounts due to the holder of the City of St. Helens Secured Claims to the extent such payments are not made by Bing's Restaurant and the Debtor's obligation to the City of St. Helens will not be discharged until the City of St. Helens Secured Claims have been paid in full. | 0% |
| Class 6<br><br>One Main Financial Secured Claim | Unimpaired | $6,313.36 | The creditor will retain its security interest in the 1994 Lexus ES300 and will receive payments consistent with the Debtor's contractual payment obligations in connection therewith. | 100% |
| Class 7<br><br>Payroll Tax Secured Claim | Unimpaired | $10,000.00 | The holder of the Payroll Tax Secured Claim will receive no distribution under the Plan. However, the Debtor will remain liable for any amounts due to the holder of the Payroll Tax Secured Claim to the extent such payments are not made by Bing's Restaurant. | 0% |

II.    FUNDING SOURCES FOR THE PLAN.

The Debtor is contractually entitled to a monthly payment of $10,100 under the Lease. Beginning in February 2013, this payment will be raised to $11,375 per month. These Lease payments will be used to fund the Reorganized Debtor's obligations under this Plan.

**Page 8 of 20** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF REORGANIZATION DATED FEBRUARY 11, 2013

1   III.    FACTORS LEADING TO CHAPTER 11 FILING, AND DEBTOR'S ASSETS AND
2           LIABILITIES.

3       A.      Factors Leading to Chapter 11 Filing.

4       The Debtor's principal asset is real property in St. Helens, Oregon (the
5   "Real Property"), upon which a restaurant, Bing's Restaurant, is located.  From
6   time to time, the Debtor borrowed money against the Real Property, for
7   improvements and other reasons.  In late 2007, Bing's Restaurant suffered
8   damage in a fire.  Although insurance covered a portion of the repair costs, the
9   Debtor borrowed additional funds to pay for renovations.

10      In 2010, the Debtor took out a loan from Hampton Heights, L.L.C., to pay
11  to renovate Bing's Restaurant and to take out the then-existing lender.   In
12  connection with that loan, the Debtor issued that certain promissory note dated
13  June 17, 2010 to Hampton Heights, L.L.C. in the original principal amount of
14  $1,100,000.  The Note required the Debtor to make payments of interest only, at
15  the rate of 11% per annum ($10,100 per month), beginning June 1, 2010.  The
16  entire balance became payable in full on December 1, 2011.  The Debtor made
17  all of his monthly payments through December 2011, but was unable to obtain a
18  new loan or negotiate an extension with Hampton Heights, L.L.C.  After Hampton
19  Heights, L.L.C. commenced foreclosure proceedings against the Real Property,
20  the Debtor was forced to file this Case.

21  IV.  DESCRIPTION OF THE PLAN.

22      The following description of the Plan is for informational purposes only and does
23  not contain all provisions of the Plan.  Creditors should not rely on this description for
24  voting purposes but should read the Plan in its entirety.  This summary of the Plan does
25  not purport to be complete.  THE PLAN IS CONTROLLING IN THE EVENT OF ANY

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11   Doc 86   Filed 02/11/13

1 INCONSISTENCY BETWEEN THE CONTENTS OF THE PLAN AND THIS
2 DISCLOSURE STATEMENT.

3       A.    <u>Classification And Treatment Of Claims Under The Plan</u>.

4           1.    <u>Claim Amounts</u>.

5       Until Allowed, certain Claims against the Debtor are in unliquidated amounts.
6 Accordingly, the amounts of Claims specified in this Disclosure Statement reflect only
7 the Debtor's estimates based on information available to him. Additionally, the amounts
8 of Claims specified in this Disclosure Statement do not include contingent or
9 unliquidated Claims against the Debtor.

10           2.    <u>Effective Date of the Plan</u>.

11       The Effective Date of the Plan determines when the performance of many of the
12 obligations under the Plan is due. Unless an appeal is taken from the Confirmation
13 Order, the Effective Date is expected to occur on the first day after the 14th day after
14 entry of the Confirmation Order.

15           3.    <u>Classification Generally</u>.

16       Under the Plan, all Claims against the Debtor, other than Administrative Claims
17 and Priority Tax Claims, are divided into seven separate classes, which the Debtor
18 believes complies with the requirements of the Bankruptcy Code. Unless otherwise
19 expressly stated in the Plan, the respective treatments under the Plan of Allowed
20 Claims are in full discharge and satisfaction of those Allowed Claims. Except as
21 provided in the Plan, all Claims against the Debtor arising prior to the Confirmation Date
22 will be discharged upon the Court's entry of a discharge order after completion of all
23 payments under the Plan.

24

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1                    4.       <u>Treatment of Claims</u>.

2        A table that briefly summarizes the classification and treatment of Claims under

3    the Plan is set forth in Section I.G above.  Reference is made to the Plan itself for the

4    specific terms and provisions.

5          B.      <u>Executory Contracts and Unexpired Leases to be Assumed if not</u>

6    <u>Rejected</u>.

7        On the Effective Date, all executory contracts and unexpired leases of the Debtor

8    that have not been rejected under this Plan or by order of the Bankruptcy Court, and are

9    not the subject of a motion to reject pending on the Confirmation Date, will be deemed

10    assumed by the Debtor and Reorganized Debtor on the Effective Date.  If any party to

11    an executory contract or unexpired lease that is being assumed objects to such

12    assumption, the Bankruptcy Court may conduct a hearing on such objection on any

13    date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court.  All

14    payments to cure defaults that may be required under Section 365(b)(1) of the

15    Bankruptcy Code will be made by the Reorganized Debtor.  In the event of a dispute

16    regarding the amount of any such payments, or the ability of the Debtor to provide

17    adequate assurance of future performance, the Reorganized Debtor will make any

18    payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of the

19    Final Order resolving such dispute.

20           1.      <u>Assumption of the Lease</u>.

21        At closing, the Reorganized Debtor will assume all of the Debtor's right, title,

22    interest and obligations under the Lease.

23          C.      <u>Objections to Claims</u>.

24        Notwithstanding the occurrence of the Effective Date, and except as to any Claim

25    that has been Allowed by Court order prior to the Effective Date, the Reorganized

26    Debtor, any Claimant, or any other party in interest may object to the allowance of any

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 Claim against the Debtor or seek estimation thereof on any grounds permitted by the

2 Bankruptcy Code by filing the appropriate pleading in the Bankruptcy Court at any time

3 prior to the first Business Day which is at least 60 days after the Effective Date. No

4 payments or other distributions will be made to holders of Claims unless and until such

5 Claims are Allowed Claims. If a Claim is not an Allowed Claim on the Effective Date, or

6 when payment is otherwise due under the Plan, payment on the Allowed Claim (plus

7 interest, if any, as provided in the Plan) will be made as soon as practicable following

8 the Allowance Date.

9      D.      Administrative Claims Bar Date.

10     All requests for payment of Administrative Claims other than Current Obligations

11 must be served and filed with the Bankruptcy Court no later than 30 days after the

12 Effective Date. Any Administrative Claim that is not served and filed by such date will

13 be forever barred. After approval of the final fee applications of the Chapter 11

14 Professionals by the Bankruptcy Court for services provided and costs incurred during

15 the course of administration of the Case, the Chapter 11 Professionals will not be

16 required to submit any further fee applications to the Bankruptcy Court.

17     E.      Discharge.

18     Except as otherwise expressly provided in the Plan (including Section 4.5), in the

19 Plan Documents, or in the Confirmation Order, once all payments have been completed

20 under the Plan, the Reorganized Debtor will request that the Bankruptcy Court enter an

21 order discharging the Debtor and Reorganized Debtor from all liability on any and all

22 Claims and Debts, known or unknown, whether or not giving rise to a right to payment

23 or an equitable remedy, that arose, directly or indirectly, from any action, inaction,

24 event, conduct, circumstance, happening, occurrence, agreement, or obligation of the

25 Debtor or his Representatives before the Confirmation Date, or that otherwise arose

26 before the Confirmation Date, including, without limitation, all interest, if any, on any

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

1    such Claims and Debts, whether such interest accrued before or after the date of

2    commencement of this Case, and from any liability of the kind specified in Sections

3    502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not a proof of claim is

4    filed or is deemed filed under Section 501 of the Bankruptcy Code, such Claim is

5    Allowed under this Plan, or the holder of such Claim has accepted this Plan.

6         F.    <u>Vesting of Property</u>.

7         Except as otherwise expressly provided in the Plan or in the Confirmation Order,

8    on the Effective Date, the Reorganized Debtor will be vested with all of the property of

9    the Estate free and clear of all Claims, liens, encumbrances, charges and other interests

10    of Creditors and Claimants. As of the Effective Date, the Reorganized Debtor may hold,

11    use, dispose, and otherwise deal with such property and conduct his affairs, in each

12    case, free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy

13    Court, other than those restrictions expressly imposed by the Plan, the Confirmation

14    Order, or the Plan Documents.

15         G.    <u>Reservation of Rights</u>.

16         Except as expressly provided in the Plan and this Disclosure Statement, the Plan

17    will have no force or effect unless the Confirmation Order is entered by the Bankruptcy

18    Court and the Effective Date has occurred. The filing of the Plan, any statement or

19    provision contained in the Plan or in this Disclosure Statement, or the taking of any

20    action by the Debtor with respect to the Plan will not be, or be deemed to be, an

21    admission or waiver of any rights of the Debtor.

22   V.    <u>FEDERAL TAX CONSEQUENCES</u>.

23         THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF

24    THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. ACCORDINGLY,

25    ALL HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT THEIR TAX

26    ADVISORS WITH SPECIFIC REFERENCE TO THE FEDERAL, STATE, AND LOCAL

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

1    TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO SUCH HOLDER.

2    NEITHER THE DEBTOR OR HIS COUNSEL MAKE ANY REPRESENTATIONS

3    REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND

4    CONSUMMATION OF THE PLAN AS TO THE DEBTOR OR ANY CREDITOR.

5    VI.    ACCEPTANCE AND CONFIRMATION.

6          A.     Voting Procedures.

7                 1.     Generally.

8          Only those Creditors whose Claims fall within one or more classes that are

9    impaired under the Plan are eligible to vote to accept or reject the Plan.  In that regard,

10   the holders of Allowed or Temporarily Allowed Claims in Classes 2-5 are entitled to vote

11   on the Plan.  Classes 1 and 6-7 are not impaired under the Plan and are deemed to

12   have accepted the Plan without voting.  The Debtor reserves the right to supplement

13   this Disclosure Statement (if necessary) and to solicit any Class which may prove to be

14   impaired and entitled to vote.

15         Separate Ballots will be sent to the known holders of Claims whether or not such

16   Claims are Disputed.  However, only the holders of Allowed or Temporarily Allowed

17   Claims in one or more impaired classes are entitled to vote on the Plan.  A Claim to

18   which an objection has been filed is not an Allowed Claim unless and until the

19   Bankruptcy Court rules on the objection and enters an order allowing the Claim.  The

20   holder of a Disputed Claim is not entitled to vote on the Plan unless the holder of such

21   Claim requests that the Bankruptcy Court, pursuant to Bankruptcy Rule 3018,

22   temporarily allow the Claim in an appropriate amount solely for the purpose of enabling

23   the holder of such Disputed Claim to vote on the Plan, and the Bankruptcy Court does

24   so.

25         //

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

1        2.    <u>Incomplete Ballots</u>.

2        Ballots which are signed, dated, and timely received, but on which a vote to

3   accept or reject the Plan has not been indicated, will not be counted as a vote to accept

4   or to reject the Plan.

5        3.    <u>Withdrawal Of Ballots; Revocation</u>.

6        The person or entity which has delivered a Ballot accepting or rejecting the Plan

7   may withdraw such acceptance or rejection by delivering a written notice of withdrawal

8   to the Debtor's attorneys, at any time prior to the voting deadline.

9        A notice of withdrawal, to be valid, must: (i) contain the description of the Claim

10  or Claims to which it relates and the amount of such Claim or Claims; (ii) be signed by

11  the voting person or entity in the same manner as the Ballot; and (iii) be received by the

12  Debtor's attorneys, Sussman Shank LLP, in a timely manner at the address set forth

13  below.

14       Unless otherwise directed by the Bankruptcy Court, a purported notice of

15  withdrawal of Ballots or change in the vote which is not received in a timely manner will

16  not be effective to withdraw or change a previously furnished Ballot.

17       4.    <u>Submission Of Ballots</u>.

18       The form of Ballot for each of the Classes entitled to vote on the Plan will be sent

19  to the parties entitled to vote along with a copy of the Court-approved Disclosure

20  Statement and a copy of the Plan.   Persons or entities receiving the Disclosure

21  Statement and Plan should read the Disclosure Statement, Plan, and Ballot carefully.

22  Any questions concerning voting procedures should be addressed to:

23       Sussman Shank LLP
         Attn: Timothy A. Solomon
24       1000 SW Broadway, Suite 1400
         Portland, OR 97205
25       Phone:  503-227-1111
         Fax:  503-248-0130

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

1   Ballot(s) or withdrawals/revocations must be returned to the Debtor's attorneys at

2   the above address. Ballots (and withdrawals/revocations) must be postmarked no later

3   than _____ __, 2013. In addition, Ballots may be faxed to the Debtor's attorneys at

4   503-248-0130. To be effective, transmission of the facsimile must begin no later than

5   5:00 P.M. Prevailing Pacific Time on _____ __, 2013.

6               5.    Confirmation Hearing and Plan Objection Deadline.

7       The Bankruptcy Court will hold a hearing on confirmation of the Plan

8   commencing on _____ __, 2013 at __:__ _.m. in the Bankruptcy Courtroom No. 1, 1001

9   SW 5th Ave #700, Portland, OR 97204. All objections, if any, to the confirmation of the

10  Plan must be in writing; must state with specificity the grounds for any such objections;

11  and must be filed with the Bankruptcy Court on or before _____ __, 2013:

12              6.    Feasibility and Risks.

13      The Bankruptcy Code requires, as a condition to confirmation, that the

14  Bankruptcy Court find that liquidation of the Debtor or the need for future reorganization

15  is not likely to follow after confirmation. For the purpose of determining whether the

16  Plan meets this requirement, the Debtor has prepared financial projections attached

17  hereto as Exhibit 1 showing that the Reorganized Debtor will have the resources and

18  ability to pay those Claims that are due on confirmation of the Plan and all future

19  obligations as they come due.

20      The principal risk to the Reorganized Debtor's ability to perform under the Plan is

21  that Bing's Restaurant, the tenant on the Debtor's real property, may break its lease,

22  choose not to renew its lease, or otherwise cease operating. Rents from Bing's

23  Restaurant are the only current source of income for the Debtor, and if the Reorganized

24  Debtor cannot continue to collect those rents in the projected amounts, he will be

25  unable to perform his obligations under the Plan.

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

1    An additional, related risk is that Bing's Restaurant will be unable or unwilling to

2    pay the City of St. Helens Secured Claims (Class 5) or the Payroll Tax Secured Claims

3    (Class 7).  Bing's Restaurant is co-liable for these obligations, and has indicated its

4    willingness and intention to pay them.  In addition, the Debtor and Bing's Restaurant are

5    engaged in discussions with the City of St. Helens regarding a payment plan regarding

6    the City of St. Helens Secured Claims, which the Debtor expects to be successful.  In

7    the event those discussions are not successful, or if they are but Bing's Restaurant

8    subsequently fails to make payments to the City of St. Helens for any reason, the

9    Debtor may not be able to make those payments himself.

10           A.      Best Interests Of Creditors.

11           Under Section 1129(a)(7) of the Bankruptcy Code, the Plan must provide that

12   Creditors receive at least as much under the Plan as they would receive in a Chapter 7

13   liquidation of the Debtor.  Although the Debtor believes the value of his real property

14   exceeds the aggregate amount of all claims against him, it is not certain that a sale of

15   such real property would lead to payment in full of all creditors, for several reasons.

16   First, the market value of the property might be less than anticipated.  More importantly,

17   the property's long-term tenant, Bing's Restaurant, is owned and operated by the

18   Debtor's mother and step father on a lease that expires at the end of 2014.  If the

19   property were sold by a trustee in a Chapter 7 case, Bing's Restaurant might choose to

20   vacate the premises at the termination of its lease (or earlier), and it is unclear how such

21   a vacancy might affect the market price of the property.  It is also difficult to predict how

22   long the property might take to sell under any set of circumstances.

23           Under the Plan, all creditors are to be paid in full, which is the most they could

24   receive under Chapter 7 under any circumstances.  Therefore, the Plan satisfies the

25   "best interest of creditors" test of Section 1129(a)(7) of the Bankruptcy Code.

26           B.      Confirmation Over Dissenting Class.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

1   In the event that any impaired class of Claims does not accept the Plan, the

2   Bankruptcy Court may nevertheless confirm the Plan at the request of the Proponent if

3   all other requirements under Section 1129(a) of the Bankruptcy Code are satisfied, and

4   if, as to each impaired class which has not accepted the Plan, the Bankruptcy Court

5   determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with

6   respect to such non-accepting class.  Each of these requirements is discussed below.

7           1.      <u>No Unfair Discrimination</u>.

8       The Plan "does not discriminate unfairly" if: (a) the legal rights of a dissenting

9   class are treated in a manner that is consistent with the treatment of other classes

10  whose legal rights are similar to those of the dissenting class; and (b) no class receives

11  payments in excess of that which it is legally entitled to receive for its claims.  The

12  Debtor believes the Plan does not discriminate unfairly as to any impaired class of

13  Claims.

14          2.      <u>Fair and Equitable Test</u>.

15      The Bankruptcy Code establishes different "fair and equitable" tests for secured

16  claims and unsecured claims, as follows:

17              (a)      Secured Creditors.    To satisfy the "fair and equitable"

18  requirement as to a class of Secured Claims, the Plan must, at a minimum, provide that

19  (i) each impaired Secured Creditor retains its liens on the property securing its Claim,

20  and receive on account of its Secured Claim deferred cash payments totaling the

21  Allowed amount of its Secured Claim, of a value, as of the Effective Date of the Plan, of

22  at least the value of the Creditor's interest in the Estate's interest in the property

23  securing such Claim, (ii) each impaired secured creditor realizes the "indubitable

24  equivalent" of its Allowed Secured Claim, or (iii) the property securing the Claim is sold

25  free and clear of liens with such liens to attach to the proceeds, and the liens against

26  such proceeds are treated in accordance with clause (i) or (ii) of this subparagraph (a).

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    Secured Creditors are either (i) receiving Allowed Secured Claims equal to the value of

2    the creditor's interest in the Estate's interest in the property securing their Claims, plus

3    payments to commence following confirmation at a market interest rate to provide them

4    with deferred cash payments equal to the Allowed amount of their Secured Claims as of

5    the Effective Date of the Plan, or (ii) continuing to receive payments in the ordinary

6    course consistent with the Debtor's contractual payment obligations, or (iii) continuing to

7    receive payments in the ordinary course from third parties, with the Debtor remaining

8    liable for such payments in the event they are not received from such third parties.

9                    (b)     Unsecured Creditors.   To satisfy the "fair and equitable"

10   requirement as to a class of unsecured Claims, the Plan must, at a minimum, provide

11   that (i) each impaired unsecured creditor receives or retains under the Plan property of

12   a value equal to the amount of its Allowed Claim, or (ii) the holders of Claims and

13   interests that are junior to the Claims of the non-accepting class do not receive any

14   property under the Plan on account of such Claims and interests, except the Debtor

15   may retain property included in the Estate under Section 1115 of the Bankruptcy Code

16   as long as the value of property to be distributed under the Plan is not less than the

17   projected disposable income of the Debtor to be received within the 5-year period

18   beginning on the date the first payment is due under the Plan, or during the period for

19   which the Plan provides payments, whichever is longer.   This is referred to as the

20   "Absolute Priority Rule".

21        In this case, each impaired unsecured creditor will receive or retain under the

22   Plan property of a value equal to the amount of its Allowed Claim.  Thus, the Debtor

23   believes the Plan complies with the fair and equitable requirement for Unsecured

24   Creditors.

25        //

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 12-36345-elp11    Doc 86    Filed 02/11/13

VII.    ALTERNATIVES TO THE PLAN.

If the Plan is not confirmed, several different events could occur.  Among the alternatives to the Plan are: (1) the Debtor could propose another plan providing for different treatment of Claims; (2) a creditor or other interested party could propose a competing plan; (3) the Debtor could convert the Case to Chapter 7; or (4) the Bankruptcy Court (after appropriate notice and hearing) could dismiss the Case if no party is able to confirm a plan in a reasonable period of time.

VIII.    <u>CONCLUSION</u>.

Under the Plan, all creditors will be paid in full, and the Debtor will retain the Real Property.  Other than Hampton Heights, L.L.C., all parties will be paid in full within 24 months of the Effective Date.  If the Plan is not confirmed, substantial uncertainty will result concerning the timing and amount of any payments.  The Debtor therefore believes that all creditors should vote to accept the Plan as it provides the best option for creditors to prompt payment in full of their Claims.

Dated:  February 11, 2013

DEBTOR:

*/s/ Paul Joe*
_____
Paul Joe


SUSSMAN SHANK LLP

*/s/ Timothy A. Solomon*
_____
By: Thomas W. Stilley, OSB No. 883167
    Timothy A. Solomon, OSB No. 072573
    Attorneys for Paul Joe

21964-002\P-DISCLOSURE STATEMENT (00015598);6

**Page 20 of 20** – FIRST AMENDED DISCLOSURE STATEMENT CONCERNING
DEBTOR'S PLAN OF REORGANIZATION DATED FEBRUARY 11, 2013

Case 12-36345-elp11    Doc 86    Filed 02/11/13

**Feasibility analysis**

| | Month 1 | Months 2-9 | Months 9-38 | Months 39-60 | Months 61-120 |
|---|---|---|---|---|---|
| **Income (from rent)** | $ 11,375.00 | $ 11,375.00 | $ 11,375.00 | $ 11,375.00 | $ 11,375.00 |
| Estimated cash on hand on effective date (approximate) | $ 40,000.00 | | | | |
| **Payments/expenses** | | | | | |
| Living expenses | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) |
| Administrative claims* | $ (40,000.00) | $ (1,250.00) | $ - | $ - | $ - |
| Non-tax priority claims (CLASS 1) | $ (735.00) | $ - | $ - | $ - | $ - |
| Restructured note payments (CLASS 2)** | $ (6,098.38) | $ (6,098.38) | $ (6,098.38) | $ (6,098.38) | $ (6,098.38) |
| Payments to general unsecured creditors (CLASS 3)*** | $ (907.34) | $ (907.34) | $ (907.34) | $ (907.34) | $ - |
| Car payments (CLASS 6) | $ (169.02) | $ (169.02) | $ (169.02) | $ - | $ - |
| **Amount remaining****** | $ 1,465.26 | $ 950.26 | $ 2,200.26 | $ 2,369.28 | $ 3,276.62 |

**Notes:**

*Lump sum at effectiveness plus monthly payments thereafter

**$1,203,583.31, 30 years, plus 4.5% interest, 10 year balloon

***$49,876.73, 60 months, plus 3.5% interest

****Remaining amount to be used for early payment of claims and/or income tax obligations

Exhibit 1
Page 1 of 1

Case 12-36345-elp11    Doc 86    Filed 02/11/13

# CERTIFICATE OF SERVICE

2  I, Janine E. Hume declare as follows:

3  I am employed in the county of Multnomah, state of Oregon; I am over the age of

4  eighteen years and am not a party to this action; my business address is 1000 SW

5  Broadway, Suite 1400, Portland, Oregon 97205-3089, in said county and state.

6  I certify that on February 11, 2013, I served the *FIRST AMENDED*

7  *DISCLOSURE STATEMENT CONCERNING DEBTOR'S PLAN OF*

8  *REORGANIZATION (Dated February 11, 2013)(clean and marked versions)* on all ECF

9  participants as indicated on the Court's Cm/ECF system and by first class mail on:

10  ODR Bkcy.
    955 Center St. NE
11  Salem, OR  97301-2555

12  I swear under penalty of perjury that the foregoing is true and correct to the best

13  of my knowledge, information, and belief.

14  Dated: February 11, 2013.

15

16  /s/ Janine E. Hume

17  _____
    Janine E. Hume, Legal Assistant

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - Page 1